# UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

## DAVIDSON COUNTY, NASHVILLE TENNESSEE

### No. 3:23-cv-01367

RECEIVED

OCT 07 2024

U.S. District Court
Middle District of TN

EYES ONLY FOR CHIEF JUDGE CAMPBELL HIGHLY SENSTIVE DOCUMENT

|  |  |
|---|---|
| **David Simpkins and Sally Simpkins** | ) **CHIEF JUDGE CAMPBELL EYES ONLY** |
| **David Simpkins and Sally Simpkins** | ) **PLAINTIFFS' EMERGENCY MOTION** |
|  | ) **PROTECTIVE ORDER AND CEASE AND** |
|  | ) **FOR LIFE THREATENING SITUATION** |
|  | ) **WITH RESPONSE TO ILLEGAL** |
|  | ) **DISMISSAL OF CASE AND IMMEDIATE** |
|  | ) **ACTION BY CHIEF JUDGE CAMPBELL** |
| **Plaintiffs,** | ) |
|  | ) **PREVIOUS CASES:** |
|  | ) **CIVIL CASE NO. 20-CV-50050** |
|  | ) **APP. CT. CS NO. M2021-00487-COA-R3-CV** |
| **JOHN MAHER Builders, Inc., et. al,** | ) **APP. CT. CS NO. M2023-00666-COA-R3-CV** |
|  | ) **Sixth Circuit Court of Appeals Judicial** |
| **JOHN MAHER and TONY MAHER** | ) **Executive Council - Complaint** |
|  | ) **Complaint No.: 06-24-90045/46** |
|  | ) **Sixth Circuit Court of Appeals Judicial** |
| **Defendants** | ) **Executive Council - EMERGENCY UPDATE** |
|  | ) **to Sixth Circuit Court Judicial Executive** |
|  | ) **Council 7-19-2024** |

**CHIEF JUDGE CAMPBELL EYES ONLY PLAINTIFFS' EMERGENCY MOTION FOR LIFE THREATENING SITUATION WITH RESPONSE TO ILLEGAL DISMISSAL OF CASE AND RESPECTFUL REQUEST FOR REVIEW AND IMMEDIATE ACTION BY CHIEF JUDGE CAMPBELL**

## AGAINST JOHN MAHER BUILDERS, INC., et. al, JOHN MAHER AND TONY MAHER INDIVIDUALLY

*Haines v. Kerner*, 404 U.S. 519 (1972)
"Allegations such as those asserted by petitioner, however in artfully pleaded, are sufficient"... "which we hold to less stringent standards than formal pleadings drafted by lawyers."

*Picking v. Pennsylvania R. Co.,* 151 Fed 2nd 240 – The court below should have applied the rule of *Ghadiali v. Delaware State Medical Society, D.C. Del.*, 48 F. Supp. 789, 790, and *Allen v. Corsano,*

## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### Case No. 3:23-cv-01367

| | |
|---|---|
| **David Simpkins and Sally Simpkins** | ) **CHIEF JUDGE CAMPBELL EYES ONLY** <br> ) **PLAINTIFFS' EMERGENCY MOTION FOR LIFE** <br> ) **THREATENING SITUATION WITH RESPONSE** <br> ) **TO ILLEGAL DISMISSAL OF CASE AND** <br> ) **RESPECTFUL REQUEST FOR REVIEW AND** <br> ) **IMMEDIATE ACTION BY CHIEF JUDGE** <br> ) **CAMPBELL** <br> ) <br> ) |
| **JOHN MAHER Builders, Inc., et. al,** <br><br> **JOHN MAHER and TONY MAHER** | ) **PREVIOUS CASES:** <br> ) **CIVIL CASE NO. 20-CV-50050** <br> ) **APP. CT. CS NO. M2021-00487-COA-R3-CV** <br> ) **APP. CT. CS NO.M2023-00666-COA-R3-CV** <br> ) |
| **Defendants** | ) <br> ) <br> ) |

**CHIEF JUDGE CAMPBELL EYES ONLY PLAINTIFFS' EMERGENCY MOTION FOR LIFE THREATENING SITUATION WITH RESPONSE TO ILLEGAL DISMISSAL OF CASE AND RESPECTFUL REQUEST FOR REVIEW AND IMMEDIATE ACTION BY CHIEF JUDGE CAMPBELL**

### AGAINST JOHN MAHER BUILDERS, INC., et. al,
### JOHN MAHER AND TONY MAHER INDIVIDUALLY

*Haines v. Kerner*, 404 U.S. 519 (1972)
"Allegations such as those asserted by petitioner, however inartfully pleaded, are sufficient"... "which we hold to less stringent standards than formal pleadings drafted by lawyers."

*Picking v. Pennsylvania R. Co.,* 151 Fed 2nd 240 – The court below should have applied the rule of *Ghadiali v. Delaware State Medical Society, D.C. Del.*, 48 F. Supp. 789, 790, and *Allen v. Corsano, D.C. Del.,* 56 F. Supp. 169, 170, "that where a plaintiff pleads pro se in a suit for the protection of civil rights the court should endeavor to construe the plaintiff's pleading without regard for technicalities."

***Pucket v. Cox,*** 456 2nd 233 - Pro se pleadings are to be considered without regard to technicality; pro se litigants' pleadings are not to be held to the same exacting standards of perfection as lawyers.

***United States v. Lee,*** 106 US 196,220 [1882] - This Court has a responsibility and legal duty to protect any and all of Plaintiff's "Constitutional and Statutory Rights."

*Tennessee Law* and *Policy* have dictated, "*a valid legal claim brought by Tennessee citizens be decided on their merits.*"

## Merits v. Legal Technicalities and Procedural Niceties

"Tennessee law and policy have always favored permitting litigants to amend their pleadings to enable disputes to be resolved **on their merits rather than on legal technicalities.**" 2009 WL 2957922 at \*4 (quoting ***Hardcastle,*** 170 S.W.2d at 80); see also ***Webb v. Nashville Area Habitat for Humanity, Inc.,*** 346 S.W.3d 422, 432 (Tenn. 2011) (noting "the strong preference embodied in the Tennessee Rules of Civil Procedure that cases stating a valid legal claim brought by Tennessee citizens be decided on their merits"); ***Jones v. Prof'l Motorcycle Escort Serv., L.L.C.,*** 193 S.W.3d 564, 572 (Tenn. 2006) ("The Tennessee Rules of Civil Procedure are intended 'to insure that cases and controversies are determined upon their merits and not upon legal technicalities or procedural niceties.") (quoting ***Karash v. Pigott***, 530 S.W.2d 775, 777 (Tenn. 1975)).

## United States Constitution

### First Amendment:
Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, **and to petition the Government for a redress of grievances**. ……………………………………………………………………………………………

### Fourteenth Amendment - Section 1.
All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. **No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws**. …………………………………………………...

Now Comes Before the United States District Court and Honorable Chief Judge Campbell, hereinafter, (USDC), as Pro Se Plaintiffs / Appellants. David and Sally Simpkins, (Veteran, United States Navy Submarine Service), The Plaintiff, David Simpkins, respectfully submits this request for an Emergency Life-Threatening Hearing due to the immediate and escalating threats posed by the Defendants' actions, which now endanger both the Plaintiff's life and his constitutional rights. These threats have taken the form of continuous harassment, stalking, tampering with the Plaintiff's property,

and the use of Directed Energy Weapons (DEWs). This situation has severely impacted the Plaintiff's physical health, mental well-being, and personal security. The Plaintiff seeks immediate judicial intervention to prevent further harm or potential loss of life.

On several occasions, the Defendants have deliberately engaged in dangerous conduct, including sabotaging the Plaintiff's vehicle, with the intent to place the Plaintiff in life-threatening situations. Specifically, the Defendants have employed DEWs, which have caused serious physical injuries and psychological distress. The escalating pattern of harassment and sabotage further heightens the imminent danger posed to the Plaintiff, which necessitates urgent action by this Honorable Court.

### Federal and State Statutes Supporting Immediate Relief

The Plaintiffs respectfully **invokes 42 U.S.C. § 1983,** which provides a federal remedy for individuals whose constitutional rights have been violated by persons acting under the color of law. The multiple Defendants' continuous acts of harassment, including the use of DEWs and physical sabotage, directly infringe upon the Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures, as well as his Fourteenth Amendment right to due process and equal protection under the law.

Moreover, under 28 U.S.C. § 1657, the Plaintiffs are entitled to an expedited hearing where their rights are at risk of immediate and irreparable harm. This statute mandates that courts prioritize cases involving the protection of constitutional rights and any case where delay would cause substantial injury to the parties involved.

On a state level, the Plaintiffs seek protection under Tennessee Code Annotated § 39-17-315 (Stalking), which defines stalking as a willful course of conduct that causes the victim to feel terrorized, frightened, intimidated, or threatened. The Defendants' actions, including the unlawful surveillance inside their home through all Wi-Fi devices including their A/C unites, TV, DVD Player, hidden cameras and microphones, and their refrigerator and tampering with the Plaintiff's vehicle, meet this definition. Further, the unlawful use of electronic tracking devices and surveillance equipment, as outlined in Tennessee Code Annotated § 39-14-149, entitles the Plaintiff to immediate relief from further harm.

Further, The Appellate Court's failure to issue a damages award is a violation of the Plaintiff's rights, despite the proven fraud and abandonment of the project by John Maher Builders. Tennessee Statutes 62-6-510 and 62-6-512 were violated, yet no compensation was granted, exacerbating the harm done to the Plaintiffs.

### Adjunct Request for Immediate Restitution or Interim Damages

The Plaintiffs, David Simpkins and Sally Simpkins, respectfully submit this **Adjunct Request for Immediate Restitution or Interim Damages**, invoking both the findings of the **Appellate Court** and relevant **United States Supreme Court rulings**. Given the immediate and ongoing threats posed by the Defendants' actions, and in light of the Appellate Court's findings of **four counts of fraud** (two civil and two criminal), the Plaintiffs respectfully request this Honorable Court to issue **interim compensation** or a **minimal award of damages** to ensure that the Plaintiffs can seek a proper, clean, and healthy residence as well as protective shelter during these life-threatening circumstances.

### Legal Basis for Restitution and Damages

Under both **Federal Law** and **Appellate Court rulings**, the Plaintiffs are entitled to damages based on proven instances of **fraud, harassment**, and **endangerment**. While final relief and damages are being determined, the Plaintiffs invoke the following **Federal Statutes** and **Supreme Court rulings** to support their request for immediate financial compensation.

### Relevant Federal Statutes

1. **42 U.S.C. § 1983** – This statute provides a remedy for violations of the Plaintiffs' constitutional rights. The Defendants' ongoing harassment, including the use of **Directed Energy Weapons (DEWs)**, violates the Plaintiffs' rights under the **Fourth** and **Fourteenth Amendments**. **42 U.S.C. § 1983** allows for immediate relief in cases of clear constitutional violations, especially when **life and safety** are threatened.
2. **28 U.S.C. § 1657** – This statute mandates **expedited proceedings** in cases where there is an imminent threat to life or where irreparable harm is at stake. This statute supports the need for immediate judicial action to prevent further harm and to provide financial resources for the Plaintiffs to seek a new and clean environment as provided bylaw.

### Appellate Court Findings

The Appellate Court has already ruled in favor of the Plaintiffs, establishing **four counts of fraud** against the Defendants, two of which are **criminal** in nature. But other law firms have enlightened the Plaintiff that several of the other claims actually fell under "Fraudulent Concealment" and 'Fraudulent Misrepresentation," ("Breach of the Covenant of Good Faith and Dealing," "Breach of the Warranty of Completion of Construction, (Federal), due to the finding of the Appellate Court for "Breach of

Warranty)," "Unfair and Deceptive Practices," and "Theft" of Government Monies as well as the Plaintiff's monies. Despite this ruling, no damages have been awarded to the Plaintiffs. This failure to compensate the Plaintiffs for their proven claims of fraud and **abandonment of contract** (Tenn. Code Ann.) - 62-6-510 and **Penalties, each offense is a class A misdemeanor,** 62-6-512, violates their right to due process and fair compensation for the harm they have suffered.

**United States Supreme Court Rulings Supporting Immediate Compensation**

1. **Carey v. Piphus**, 435 U.S. 247 (1978)
   - o **Quote**: *"In the case of proven violations of constitutional rights, compensation must follow, and damages should be awarded even where the extent of harm is in question, as the denial of rights itself warrants relief."*
   - o This case supports the immediate award of damages to the Plaintiffs based on the proven violations of their constitutional rights, regardless of the final amount.
2. **Peralta v. Heights Medical Center, Inc.**, 485 U.S. 80 (1988)
   - o **Quote**: *"Due process requires that a party be given the opportunity to receive adequate compensation where their rights have been violated."*
   - o The Supreme Court in **Peralta** reaffirmed that where a party has suffered from violations of their rights, **compensation must be provided promptly** to prevent further harm. This ruling supports the Plaintiffs' request for interim damages to address their immediate need for safe housing and protection.
3. **Frow v. De La Vega**, 82 U.S. 552 (1872)
   - o **Quote**: *"In cases where a defendant fails to respond or defend themselves in a timely manner, the court must issue a default judgment and award damages to the injured party."*
   - o This case underscores the necessity of awarding **default damages through a "Judgment by Default,"** in situations where the Defendants have failed to appropriately respond to the proven claims of fraud, leaving the Plaintiffs without financial relief.

**Request for Immediate Compensation for Replacement of all Costs, Expenses, Loss of Liberty, Freedom, Constitutional Rights, Belongings, Home and Loss of a Normal Life for Seven (7) Harsh Years**

In light of the ongoing danger to the Plaintiffs' life and safety, and given the Appellate Court's findings and U.S. Supreme Court precedents, the Plaintiffs respectfully request the following interim relief:

1. **Immediate Award of Interim Damages** – The Plaintiffs request an immediate award of **minimum compensation** or **interim damages** based on the Appellate Court's findings of fraud and the violations of the Plaintiffs' constitutional rights. This award should provide the Plaintiffs with sufficient resources to seek safe, clean, and new healthy housing to include new vehicles, ability to pay off all debts incurred due to the Builder's Fraud, the loss of the Plaintiff's Credit Score of 815, the loss of a normal life, the loss of an irreplaceable heirloom, a 100 year old Grand Piano which was Mrs. Simpkins' Grand Mother's Piano, all household goods, furniture, clothes, inability to celebrate any Holidays, Birthdays, Anniversaries and no vacations for 8 years.

2. **Provision for Protective Shelter** – The Plaintiffs also request that the Court issue an order for **protective shelter**, or financial resources to obtain shelter, to ensure that the Plaintiffs can relocate to a safe and protected environment while the ongoing threats to their lives persist.

3. **Restitution Based on Appellate Court Findings** – The Plaintiffs further request that this Honorable Court recognize the **Appellate Court's judicial notice** of the Plaintiffs' exhibits as **unquestioned evidence** and issue a **minimal restitution award** to cover the damages already proven by the Appellate Court.

**Conclusion**

Given the immediate and ongoing threats to the Plaintiffs' safety, the Plaintiffs respectfully request this Honorable Court to issue interim damages or minimal compensation to allow the Plaintiffs to obtain safe housing and protection from further harm. This request is made in accordance with Federal Statutes, Appellate Court findings, and **United States Supreme Court** precedents, which mandate that individuals whose rights have been violated are entitled to **timely relief and compensation**.

The Plaintiffs trust that this Honorable Court will recognize the urgency of this situation and issue the requested relief promptly to protect the Plaintiffs from further harm.

**Case Law Supporting Immediate Judicial Intervention**

***Fisher v. Michigan,*** 558 U.S. 908 (2009), affirmed that courts can act under the "emergency aid" doctrine when there is an objective belief that someone is in immediate danger. The Plaintiff's continued exposure to life-threatening situations, particularly with the use of DEWs, warrants immediate relief.

In ***Carey v. Piphus,*** 435 U.S. 247 (1978), the U.S. Supreme Court emphasized that the violation of constitutional rights—especially when the Plaintiff is subject to physical harm or psychological distress—

requires prompt judicial action. Any failure to provide immediate relief in this case would perpetuate further violations of the Plaintiff's constitutional rights.

Additionally, *Ex parte McCardle,* 74 U.S. 506 (1868), and *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998), reinforce the principle that the Court must resolve issues of jurisdiction promptly. The lower courts' failure to award damages and failure to provide adequate protection for the Plaintiffs, despite clear jurisdictional authority, violates established legal principles and demands immediate judicial rectification.

### Consequences of Delay and Urgency

Immediate relief is necessary to prevent further harm to the Plaintiff. As established in *Mathews v. Eldridge,* 424 U.S. 319 (1976), and *Zinermon v. Burch,* 494 U.S. 113 (1990), due process requires timely intervention when an individual's rights to life, liberty, and property are being threatened. In the present case, the Plaintiff's life is in imminent danger due to the Defendants' escalating attacks and harassment, making judicial intervention not just necessary but imperative.

The Tennessee Court of Appeals, in *State v. Burda,* 201 S.W.3d 669 (Tenn. 2006), upheld convictions under the stalking statute for behavior similar to what the Plaintiff is experiencing, reinforcing his claims for immediate protection. Similarly, in *State v. Johnson,* 20 S.W.3d 690 (Tenn. 1999), and *State v. Rhinehart,* 938 S.W.2d 373 (Tenn. 1996), the courts demonstrated the state's commitment to protecting individuals from harassment and stalking, further supporting the Plaintiff's request for an *emergency hearing and injunctive relief.*

This Emergency Motion for Life Threatening Situation comes with a Response to the Illegal Dismissal of their case on **October 2, 2024**, by Magistrate Judge Frensley and Judge Crenshaw. The court's dismissal took place despite several critical pending motions, including those necessary for the Plaintiffs' protection. This dismissal occurred in violation of multiple federal laws and due process rights, causing irreparable harm, particularly in light of the **VA moratorium on foreclosures**, which is set to end on **December 30, 2024**. The Federal Judges were aware of this deadline, but Mr. Simpkins only discovered it on **September 9, 2024**, leaving him vulnerable to foreclosure without intervention of the USDC to award damages which the Plaintiffs have been entitled to by law for several years.

1) Further the Simpkins again state that this Motion is proper to address the previously filed Protective and Cease and Desist Order requests to provide immediate protection for the Simpkins.

2) Further, based on the fact that the lower Courts never had subject-matter-jurisdiction, hereinafter, (SMJ), and the Judges of both Courts, and the Defendant's Attorneys all knowing that the lower Courts never had SMJ, was a knowing alleged intentional criminal act and therefore the Plaintiffs are entitled to a Judgment by Default, *Cox v. Burke*, 706 So. 2d 43, 47 (Fla. 5th DCA 1998),

"Courts throughout this state have repeatedly held **"that a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ the very institution it has subverted to achieve her ends." *Metropolitan Dade County v. Martinsen*,** 736 So. 2d 794, 795 (Fla. 3d DCA 1999) (quoting *Hanono v. Murphy*, 723 So. 2d 892, 895 (Fla. 3d DCA 1998)); *see also Cox v. Burke*, 706 So. 2d 43, 47 (Fla. 5th DCA 1998); *O'Vahey v. Miller*, 644 So. 2d 550, 551 (Fla. 3d DCA 1994); *Kornblum v. Schneider*, 609 So. 2d 138, 139 (Fla. 4th DCA 1992)."

3) Based on the case law for "Judgment by Default," *"that a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ the very institution it has subverted to achieve her ends,"* this Federal Court, the USDC, is respectfully requested to issue an Order for a ruling of "Judgment by Default" based on the actions by the Builder, who has allegedly enjoined others to bring about harm and the obvious intent of the Plaintiff's demise." Additionally, the USDC is respectfully requested to issue an Order for an immediate award of damages even if it is only "Interim Damages" as allowed by Law, based on the damages detailed in the Plaintiff's Exhibit with exceptions noted hereafter, *(SIMP-00A131 - 1375 Round Hill Ln Mit. of Damages Expenses - FINAL 4-1-2024)*. As the Plaintiffs have stated, they put all of their damages in the spreadsheet and had the spreadsheet verified by their previous accountant (deceased) who stated that the calculations were correct even though it surprised their accountant and the Plaintiffs at the high numbers. But those numbers have increased due to the interest on the damages that should have been awarded to the Plaintiffs in May of 2022. The additional two (2) years with post interest have run the damages much higher, but not because of the Plaintiffs, but because of the criminal acts perpetrated by the Defendants and all coconspirators who knowingly, willingly, with malicious intent to harm and cause extreme mental, physical and financial injury to the Plaintiffs and to make them suffer horrific pain in an extremely toxic environment, have drug this case out then illegally dismissed it. Further, the outrageous numbers the Simpkins did not do either. Once hackers, Mr. KB and others started attacking the Simpkins' Computers, they started changing the documents without the Simpkins being aware.

4) As the Plaintiffs have also stated in numerous motions and notices to all of the Courts, the Plaintiffs have never wanted the last massive number in the spreadsheet, even though by law due to the egregious and heinous acts of the acts of the Defendant Builder there are no caps for incidental and consequential, punitive, emotional distress, or treble damages. The Incidental and Consequential Damages by Tennessee Statute, (Tenn. Code Ann. § 47-2-715. Buyer's Incidental and Consequential Damages)

speak for themselves as they are the damages that are a result of the costs, expenses and losses that the Plaintiffs have already experienced and presented those receipts to the Courts and those costs, expenses and losses have been in the spreadsheet since day one with the proven costs, expenses and losses. But the Plaintiffs do feel they are entitled to and allowed by law the damages for $363,922,333.91, which are the treble damages owed by the Corporation, CEO, John Maher, and COO, Tony Maher. If the Court disagrees with this, then please explain why. As the Court knows, the Plaintiffs are Pro Se Litigants, and they put together the spreadsheet with all of the expenses at that time. If the Court does not disagree with the damages after seven years, we ask the Court to state so.

## SECTION 1: INTRODUCTION AND OVERVIEW OF PENDING MOTIONS

**Pending Motions Overview**

The following motions were pending at the time of dismissal and should have been ruled on before the court took any further action:

1. **Motion for Protective & Cease and Desist Order** (Filed September 4, 2024): This motion sought immediate protective relief due to the ongoing harm caused by the Defendants' actions, including harassment, illegal surveillance, and misuse of **Directed Energy Weapons**.

   o **Federal Statute: 28 U.S.C. § 1657** mandates that courts prioritize motions that involve irreparable harm or threat to individuals. The failure to prioritize this motion in violation of federal law constitutes a breach of due process.

   o **United States Supreme Court Case Laws**:

     ▪ *Carey v. Piphus,* 435 U.S. 247 (1978): "Failure to act in cases involving potential harm constitutes a denial of procedural due process and can warrant both injunctive and compensatory relief."

     ▪ *Brock v. Roadway Express, Inc.,* 481 U.S. 252 (1987): "Courts are required to expedite rulings on protective orders to prevent irreparable harm to individuals."

     ▪ *Zinermon v. Burch,* 494 U.S. 113 (1990): "When individuals are deprived of their due process rights through delayed judicial action, they are entitled to immediate injunctive relief."

2. **Emergency Motion for Protective & Cease and Desist Order** (Filed September 12, 2024): This emergency motion reiterated the urgent need for the court's protection. The Plaintiffs were under direct threat from the Defendants, who used **Directed Energy Weapons** and harassed the Plaintiffs daily.

- o **Federal Statute: 18 U.S.C. § 2261A (Stalking Statute)** protects individuals from repeated harassment and threats. The Defendants' use of energy weapons and other tactics constitutes stalking under federal law, and the court's failure to rule on the emergency motion exposed the Plaintiffs to ongoing harm.
- o **United States Supreme Court Case Laws:**
  - ▪ *Habeas Corpus Case, Ex parte Milligan,* 71 U.S. 2 (1866): "When a person's safety is in jeopardy, a delay in judicial relief is an abdication of the court's responsibility to protect constitutional rights."
  - ▪ *Goldberg v. Kelly,* 397 U.S. 254 (1970): "Due process requires an immediate and timely hearing when an individual's life, liberty, or property is at risk."
  - ▪ *Mathews v. Eldridge,* 424 U.S. 319 (1976): "Courts must balance the potential harm to an individual against any government interest in delaying or denying relief."

3. **Emergency Motion to USDC Chief Judge Campbell (Filed September 23, 2024):** This "Eyes Only" motion was specifically directed to **Chief Judge Campbell**, detailing the ongoing threat and requesting immediate judicial intervention. The motion highlighted that the court's failure to act on the prior motions was putting the Plaintiffs' lives and property in imminent danger.
- o **Federal Statute: 28 U.S.C. § 636(c)** requires that magistrate judges receive consent from the parties involved before taking over case proceedings. The referral to **Magistrate Judge Frensley** was made without the Plaintiffs' consent, further complicating the procedural violations in this case.
- o **United States Supreme Court Case Laws:**
  - ▪ *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998): "The jurisdictional question must always be resolved as a threshold issue. No court may act without properly establishing jurisdiction."
  - ▪ *Ex parte McCardle,* 74 U.S. 506 (1869): "Without jurisdiction, the court cannot proceed in any cause. Lack of jurisdiction renders any decisions or orders void."
  - ▪ *Middlesex Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423 (1982): "Federal courts have an obligation to act swiftly in cases where ongoing harm is clearly demonstrated."

**SECTION 2: REFERENCE TO MOTIONS FOR SUBJECT MATTER JURISDICTION AND VIOLATIONS**

The Plaintiffs have filed multiple motions that directly address the issue of **subject matter jurisdiction**, which the Court has failed to rule on. Subject matter jurisdiction is fundamental to the court's authority to hear the case, and it must be determined before any substantive rulings are made. The court's failure to address this crucial issue is a violation of both federal law and due process rights.

**Motions Pertaining to Jurisdiction**

1. **Motion to Determine Jurisdiction** (Filed January 30, 2024): This motion directly challenged whether the United States District Court for the Middle District of Tennessee had **subject matter jurisdiction** over the claims against the Defendants, specifically under **18 U.S.C. § 3231**. The Plaintiffs highlighted that the actions at issue involved federal questions related to constitutional violations, making jurisdiction necessary.

   o **Federal Statute: 28 U.S.C. § 1331** provides that federal courts have jurisdiction over cases involving federal questions. The court must rule on this matter before proceeding with other issues.

   o **United States Supreme Court Case Laws**:

      ▪ *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998): "Jurisdiction must be established as a threshold matter before a court can take any substantive action in a case."

      ▪ *Ex parte McCardle,* 74 U.S. 506 (1869): "Jurisdiction is essential to any court's authority to act, and decisions made without jurisdiction are void."

      ▪ *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574 (1999): "Subject matter jurisdiction must be addressed and resolved as a preliminary issue before the merits of the case can be considered."

2. **Final Motion to the USDC Requesting Rulings on Subject Matter Jurisdiction** (Filed May 7, 2024):

   This motion emphasized the need for the court to rule on **subject matter jurisdiction** before any further actions or dismissals could be made. It also reiterated the harm caused by delays in ruling, including the threat of foreclosure due to the **VA moratorium expiration on December 30, 2024**.

3. **Federal Statute: 28 U.S.C. § 1447(c)** mandates that courts address jurisdictional issues at the earliest possible stage in the litigation. Failure to do so undermines the legal process and violates procedural rules.

- o **United States Supreme Court Case Laws**:
    - *Hertz Corp. v. Friend,* 559 U.S. 77 (2010): "Federal courts must determine whether they have jurisdiction as a priority before addressing the substance of a case."
    - *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422 (2007): "A court's first obligation is to ensure that it has jurisdiction over the case before proceeding to other matters."
    - *Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546 (2005): "Jurisdictional determinations must be made before the merits of the case are addressed."

**Violation of Due Process Rights**

The failure to address **subject matter jurisdiction** has caused ongoing harm to the Plaintiffs by delaying the proper adjudication of their claims. **Due process** requires that courts act in a timely and fair manner when issues of jurisdiction are raised.

**Fifth Amendment**: "No person shall be deprived of life, liberty, or property, without due process of law." The court's delay in ruling on jurisdiction constitutes a violation of this fundamental constitutional right.

- **United States Supreme Court Case Laws**:
    - o *Hamdi v. Rumsfeld,* 542 U.S. 507 (2004): "Due process requires a meaningful opportunity to be heard in a timely manner."
    - o *Mathews v. Eldridge,* 424 U.S. 319 (1976): "Due process requires balancing the risk of erroneous deprivation of rights against the government's interest in proceeding with the case."
    - o *Goldberg v. Kelly,* 397 U.S. 254 (1970): "Timely access to justice is a critical element of due process, particularly when delays can cause irreparable harm."

## SECTION 3: FEDERAL LAWS AND SUPREME COURT CASES RELATED TO DUE PROCESS AND SUBJECT MATTER JURISDICTION

The dismissal of the Plaintiffs' case without addressing subject matter jurisdiction and failing to rule on pending motions violates several key federal statutes and due process protections under the **Fifth Amendment**. The court's inaction left the Plaintiffs vulnerable to ongoing harm and deprived them of their right to a fair and timely judicial process.

**Due Process Violations (Fifth and Fourteenth Amendments)**

**Fifth Amendment Due Process Clause**: "No person shall be deprived of life, liberty, or property without due process of law." The failure of the court to address crucial motions and jurisdictional issues constitutes a deprivation of due process, leaving the Plaintiffs without recourse or protection.

- **Relevant Supreme Court Case Laws**:
  - *Haines v. Kerner,* 404 U.S. 519 (1972):

    **Quote**: "Pro se litigants are held to less stringent standards than formal pleadings drafted by lawyers. Courts must consider the substance of pro se motions rather than dismiss them on technical grounds."

In this case, the Plaintiffs, acting pro se, have been denied their due process rights by the court's failure to address their substantive motions. The case emphasizes that pro se litigants must be granted leniency in procedural matters and that their filings should be taken seriously.

  - *Pucket v. Cox,* 456 F.2d 233:

    **Quote**: "Pro se pleadings cannot be dismissed over technicalities or mere procedural grounds if they raise valid constitutional issues."

    The court's actions disregarded the procedural protections owed to pro se litigants and failed to address the valid constitutional claims raised by the Plaintiffs.

  - *United States v. Lee,* 106 U.S. 196 (1882):

    **Quote**: "The judiciary has a duty to protect individuals' constitutional rights when they are under threat from state action or judicial neglect."

    The Plaintiffs' rights to fair adjudication and timely resolution of their motions were violated by the court's failure to rule on essential matters.

**Federal Statutes Violated by the Court's Inaction**

1. **28 U.S.C. § 1657**: Requires courts to prioritize motions that involve imminent harm or irreparable damage. The failure to prioritize the Plaintiffs' motions for protective orders, which involved direct threats to their safety, violates this statute.

2. **28 U.S.C. § 1447(c)**: Jurisdictional issues must be resolved at the earliest stage of the litigation. The court's failure to determine subject matter jurisdiction undermined the legal process and violated federal procedure.

3. **28 U.S.C. § 1331**: Federal courts have jurisdiction over cases involving federal questions. The Plaintiffs' claims involved constitutional violations and federal statutes, making it imperative that the court address the jurisdictional issue before dismissing the case.

## SECTION 4: DETAILED MISCONDUCT BY MAGISTRATE JUDGE FRENSLEY AND JUDGE CRENSHAW

The actions taken by **Magistrate Judge Frensley** and **Judge Crenshaw** in this case demonstrate a pattern of misconduct and a failure to adhere to both federal law and procedural fairness. The referral to **Magistrate Judge Frensley** was made without the Plaintiffs' consent, in direct violation of **28 U.S.C. § 636(c)**, which requires the consent of all parties before a magistrate judge can preside over a case.

**Magistrate Judge Frensley's Improper Involvement**

The Plaintiffs explicitly denied consent for **Magistrate Judge Frensley** to preside over the case in the **"Notice Regarding Consent of the Parties"** filed on **January 30, 2024**. Despite this, Frensley continued to rule on the case, including dismissing it on **October 2, 2024**. The Plaintiffs' rights were further violated when **Judge Crenshaw** improperly referred the case back to **Magistrate Judge Frensley**, contrary to the requirements of **28 U.S.C. § 636(c)**.

- **Federal Statute**: **28 U.S.C. § 636(c)** clearly states that magistrate judges may only preside over civil cases with the consent of all parties. The referral by **Judge Crenshaw** was improper and further contributed to the denial of the Plaintiffs' rights.

- **United States Supreme Court Case Laws**:
    1. *United States v. Raddatz,* 447 U.S. 667 (1980):
       **Quote**: "Without the consent of both parties, a magistrate judge lacks jurisdiction to preside over civil matters."
    2. *Peretz v. United States,* 501 U.S. 923 (1991):
       **Quote**: "The requirement of consent is essential in ensuring that the magistrate's jurisdiction is properly established."

3. ***Gomez v. United States,*** 490 U.S. 858 (1989):

   **Quote:** "The delegation of authority to a magistrate judge without proper consent violates the constitutional rights of the parties involved."

   Magistrate Judge Frensley's actions, without the Plaintiffs' consent, not only contravene federal law but also infringe upon the Plaintiffs' Fifth Amendment rights by depriving them of a proper judicial process.

**Improper Referral by Judge Crenshaw**

Despite the Plaintiffs' explicit denial of consent, Judge Crenshaw referred the case back to Magistrate Judge Frensley. This action directly violated the procedural requirements of 28 U.S.C. § 636(c), as well as federal case law that mandates consent before a magistrate judge can assume control over a case.

The improper referral further compromised the Plaintiffs' right to a fair hearing, as the court continued to ignore jurisdictional issues and failed to address the numerous pending motions.

- **United States Supreme Court Case Laws:**
  1. ***Henderson v. United States,*** 517 U.S. 654 (1996):

     **Quote:** "Any ruling or order issued by a magistrate judge who has not been properly referred a case due to lack of consent is void ab initio (from the beginning)."

     In the present case, all rulings made by Magistrate Judge Frensley following the improper referral are void due to the failure to obtain the Plaintiffs' consent, which the Plaintiffs denied without reservation.

  2. ***McCarthy v. Madigan,*** 503 U.S. 140 (1992):

     Quote: "Improper delegation of judicial authority without the consent of both parties deprives them of a constitutionally mandated adjudication process."

     The Plaintiffs' rights were violated when Judge Crenshaw improperly referred the case back to Magistrate Judge Frensley, bypassing the Plaintiffs' right to have their case heard by an Article III judge.

## SECTION 5: RETALIATORY PROTECTIVE ORDERS AND DEFECTIVE EVIDENCE UNDER FEDERAL AND STATE LAWS

The retaliatory protective orders filed by **Kevin Buchiero** and **Pamela Nadeau** on **September 14, 2024**, with the **General Sessions Court in Franklin, TN**, were a direct response to the Plaintiffs'

earlier filings for **Protective and Cease and Desist Orders** in the **USDC** on **September 4, 2024**, and **September 12, 2024**. The state court's acceptance of these fraudulent orders, based on defective and manipulated evidence, violates both **Tennessee State Law** and **Federal Law**.

## Violation of Tennessee Law Regarding Protective Orders

**Tennessee Code Annotated § 36-3-601** outlines the legal standards for issuing protective orders in the state. The statute mandates that there must be credible evidence of a threat or immediate harm for an order to be valid. In this case, the protective orders filed by the Defendants were based on misrepresented video snippets and other unauthenticated evidence, none of which met the statutory threshold for issuing such orders.

- **Case Law**:
    1. **State v. Regan, 343 S.W.3d 396 (Tenn. 2010)**:
       **Quote**: "A protective order can only be issued if there is substantial and credible evidence that the petitioner is in imminent danger of harm."
       The Defendants presented no credible evidence of imminent harm, and the state court's issuance of the protective orders violated Tennessee law.
    2. *McKee v. McKee,* 527 S.W.3d 835 (Tenn. Ct. App. 2017):
       **Quote**: "Retaliatory legal actions, especially those filed without evidence of legitimate danger, must be dismissed as fraudulent."
       The protective orders in this case were filed as retaliation against the Plaintiffs for seeking protection in federal court. This retaliatory action is prohibited under Tennessee law and should have been dismissed by the state court.
    3. *State v. Hughes,* 544 S.W.3d 293 (Tenn. 2018):
       **Quote**: "Protective orders that are based on misleading or manipulated evidence are void ab initio (from the start)."
       The state court allowed the Defendants to submit unauthenticated and misleading video snippets as evidence, which violates Tennessee's evidentiary standards and renders the protective orders void.

## Violation of Federal Law and the Supremacy Clause

The **Supremacy Clause** of the **United States Constitution** (Article VI, Clause 2) provides that federal law takes precedence over state law when conflicts arise. By issuing protective orders based on fraudulent claims while the Plaintiffs' federal protective orders were still pending, the **General Sessions Court** violated the **Supremacy Clause**.

- **Federal Statutes**:
  1. **42 U.S.C. § 1983**: Prohibits retaliatory legal actions and provides recourse for individuals whose constitutional rights are violated under color of state law. The Defendants' actions, in coordination with the state court, constitute retaliation for the Plaintiffs' exercise of their federal rights.
  2. **18 U.S.C. § 2261A (Federal Stalking Statute)**: Criminalizes the use of harassment, including through electronic means, with the intent to place another person in fear of serious harm. The Defendants' use of **Directed Energy Weapons** and other forms of harassment fall under this statute.


- **United States Supreme Court Case Laws**:
  1. *Arizona v. United States,* 567 U.S. 387 (2012):
     **Quote**: "State actions that interfere with or contradict federal protections must be preempted by federal law."
     The state court's issuance of protective orders in direct conflict with the Plaintiffs' federal motions is invalid under the **Supremacy Clause**.
  2. *Crosby v. National Foreign Trade Council,* 530 U.S. 363 (2000):
     **Quote**: "When state law or actions conflict with federal law, the state action must yield under the Supremacy Clause."
     The state court's actions were in conflict with the Plaintiffs' federal filings and must be set aside as preempted by federal law.
  3. *McCulloch v. Maryland,* 17 U.S. 316 (1819):
     **Quote**: "The laws of the United States, made in pursuance of the Constitution, are the supreme law of the land; anything in state laws to the contrary must be invalidated."
     The **General Sessions Court** violated the **Supremacy Clause** by issuing conflicting protective orders that undermined the Plaintiffs' federal rights.

## Defective Evidence and Bias by the General Sessions Court

The **General Sessions Court** accepted unauthenticated video snippets as evidence from the Defendants, even after the Plaintiffs objected to the lack of proper authentication. The court then required that the Plaintiffs authenticate their **AT&T log file**, despite its clear provenance, revealing a double standard in evidentiary requirements that demonstrates bias in favor of the Defendants.

- **Federal Rules of Evidence (Fed. R. Evid. 901)** and **Tennessee Rules of Evidence (Tenn. R. Evid. 901)** require that all evidence be authenticated before being admitted. The **Defendants' video snippets** were not authenticated, and their source was unknown, yet the court allowed them to be considered. Meanwhile, the court demanded strict authentication of the **AT&T log file**, which was provided directly by the service provider, demonstrating clear bias.

- **United States Supreme Court Case Laws**:
    1. *United States v. Boykin,* 986 F.2d 270 (8th Cir. 1993):
       **Quote**: "Unauthenticated evidence cannot be used to support legal findings or rulings, and any decision based on such evidence is legally invalid."
       The **General Sessions Court**'s reliance on unauthenticated video evidence is a violation of this fundamental evidentiary rule.
    2. *State v. Mickens,* 123 S.W.3d 355 (Tenn. Ct. App. 2003):
       **Quote**: "Courts must apply evidentiary standards equally to both parties. Allowing one party to submit unauthenticated evidence while demanding strict adherence from the other is a violation of due process."
       The **General Sessions Court** showed clear bias by applying inconsistent standards to the evidence presented by the Plaintiffs and the Defendants.
    3. *United States v. Tropeano,* 252 F.3d 653 (2d Cir. 2001):
       **Quote**: "The admission of unauthenticated evidence not only violates procedural rules but also constitutes a denial of due process, especially when such evidence is relied upon to reach legal conclusions."
       The reliance on **Defendants' video snippets** that were neither authenticated nor properly introduced renders the protective orders issued by the court invalid.

## SECTION 6: SUPREMACY CLAUSE AND FAILURE TO RECOGNIZE FEDERAL AUTHORITY

The **General Sessions Court** in **Franklin, TN** violated the **Supremacy Clause** of the **U.S. Constitution** (Article VI, Clause 2) by issuing state-level protective orders that conflicted with pending federal motions. The Plaintiffs had filed **Protective and Cease and Desist Orders** with the **USDC** on **September 4, 2024**, and **September 12, 2024**, which took precedence over any conflicting state actions. The state court's failure to recognize this federal authority, and its deference to **Defendants' retaliatory filings**, constituted a violation of the Plaintiffs' constitutional rights under the Supremacy Clause.

**Supremacy Clause and Federal Preemption**

The **Supremacy Clause** establishes that the Constitution, and federal laws made pursuant to it, are the "supreme law of the land." When federal and state laws conflict, federal law must take precedence. The **General Sessions Court** not only failed to acknowledge the federal motions pending in the USDC but also allowed the **Defendants** to misuse state laws to issue conflicting protective orders.

- **Federal Statute**:

  **28 U.S.C. § 1331** grants federal courts jurisdiction over cases that involve federal questions, including constitutional rights. Once the Plaintiffs filed their federal motions, any conflicting state actions should have been set aside in accordance with the **Supremacy Clause**.

- **United States Supreme Court Case Laws**:

  1. *McCulloch v. Maryland,* 17 U.S. 316 (1819):

     **Quote**: "The Constitution and the laws made in pursuance thereof must take precedence over any conflicting state action or law."

     The **General Sessions Court** failed to uphold the **Supremacy Clause** by allowing state-level protective orders to interfere with federal proceedings.

  2. *Arizona v. United States,* 567 U.S. 387 (2012):

     **Quote**: "When state laws interfere with federal protections or override federal actions, they are preempted under the Supremacy Clause."

     The state court's actions in this case directly conflicted with the federal orders pending in the **USDC** and should have been preempted.

  3. *Crosby v. National Foreign Trade Council,* 530 U.S. 363 (2000):

     **Quote**: "Any state action that impedes or conflicts with federal law must be invalidated

under the Supremacy Clause."

The issuance of retaliatory protective orders by the **General Sessions Court** was in direct conflict with federal protections sought by the Plaintiffs.

## The Court's Deference to Defendants' Counsel

In addition to failing to recognize federal authority, **Judge Denise Andre** deferred to the **Plaintiff's attorney**, who misrepresented the application of the Supremacy Clause by falsely claiming that the federal court needed to issue a ruling before the **Supremacy Clause** could be invoked. This argument is contrary to established federal case law, which holds that the Supremacy Clause applies to **pending federal actions**, not just those where a final ruling has been made.

- **Case Law**:
  1. *Testa v. Katt,* 330 U.S. 386 (1947):

     **Quote**: "State courts must enforce federal law and cannot refuse to do so based on state-level considerations."

     The **General Sessions Court** was obligated to acknowledge the pending federal motions and defer to the **USDC** instead of issuing conflicting state orders.

  2. *Haywood v. Drown,* 556 U.S. 729 (2009):

     **Quote**: "State courts are bound by the Supremacy Clause to recognize and enforce federal rights and laws, even in the face of conflicting state law."

     By failing to apply the **Supremacy Clause**, **Judge Andre** violated the Plaintiffs' federal rights.

  3. *Howlett v. Rose,* 496 U.S. 356 (1990):

     **Quote**: "The Supremacy Clause ensures that state courts cannot ignore or undermine federal rights by applying conflicting state laws."

     The **General Sessions Court** improperly deferred to the **Plaintiff's attorney**, who misrepresented federal law to the court, further violating the Plaintiffs' rights.

## SECTION 7: FAILURE TO PROVIDE DUE PROCESS AND BIAS BY THE GENERAL SESSIONS COURT

The actions of the **General Sessions Court** in **Franklin, TN** demonstrated a clear bias in favor of the **Defendants**, **Kevin Buchiero** and **Pamela Nadeau**, by allowing **unauthenticated video snippets** to be introduced as evidence while demanding strict authentication from the Plaintiffs for

their **AT&T log file**. This unequal application of evidentiary standards constitutes a violation of the Plaintiffs' **due process rights** under both **Federal Rules of Evidence** and **Tennessee State Rules of Evidence**.

**Due Process and Evidentiary Bias**

Under **Federal Rules of Evidence (Fed. R. Evid. 901)** and **Tennessee State Rules of Evidence (Tenn. R. Evid. 901)**, all evidence must be properly authenticated before it can be admitted in court. In this case, the **Defendants' video snippets** were not authenticated, and their source was unknown, yet they were admitted and relied upon by the court. At the same time, the **Plaintiffs' AT&T log file**, which clearly showed unauthorized access by Mr. Buchiero, was subjected to much stricter scrutiny, and the court required expert testimony to authenticate it.

This unequal application of standards is a violation of the Plaintiffs' due process rights and demonstrates clear bias in favor of the Defendants.

- **Federal Statute**:

  **Fed. R. Evid. 901** requires that all evidence must be authenticated to be admissible. The **General Sessions Court** failed to apply this rule equally to both parties, allowing unauthenticated evidence from the Defendants to be admitted without question while demanding stringent authentication for the Plaintiffs' evidence.

- **United States Supreme Court Case Laws**:

  1. **United States v. Boykin, 986 F.2d 270 (8th Cir. 1993)**:

     **Quote**: "Evidence that is not authenticated or properly introduced cannot form the basis of judicial rulings or findings."

     The **General Sessions Court**'s reliance on unauthenticated video snippets is a violation of this basic rule of evidence.

  2. **State v. Mickens, 123 S.W.3d 355 (Tenn. Ct. App. 2003)**:

     **Quote**: "Courts must apply evidentiary standards equally to all parties, and failure to do so constitutes a violation of due process."

     The **General Sessions Court** showed clear bias by applying unequal standards to the evidence presented by the Plaintiffs and the Defendants.

  3. **Chambers v. Mississippi, 410 U.S. 284 (1973)**:

     **Quote**: "The fundamental requirements of due process must be met in the admission of evidence, and unfair exclusion or admission of evidence deprives the parties of a fair trial."

The **General Sessions Court** violated the Plaintiffs' due process rights by admitting unauthenticated evidence that favored the Defendants, while placing unreasonable burdens on the Plaintiffs to authenticate their evidence.

**Defendants' Unauthenticated Video Snippets**

The **video snippets** presented by the **Defendants** were not only unauthenticated but were also taken out of context, showing only small portions of interactions that misrepresented the situation. The Plaintiffs objected to these video snippets on the grounds that they were incomplete, misleading, and lacked proper authentication. However, the court dismissed the Plaintiffs' objections and allowed the snippets to be considered as evidence, despite the fact that their provenance was unknown, and they had been selectively edited.

**Plaintiffs' AT&T Log File**

The Plaintiffs presented an **AT&T log file** showing that **Kevin Buchiero** had gained unauthorized access to their internet network. This log file was provided directly by **AT&T**, a trusted service provider, and should have been accepted as authenticated evidence. However, the court required the Plaintiffs to produce an expert witness to authenticate the log file, creating an unnecessary burden and demonstrating further bias in favor of the Defendants.

- **Case Law**:
    1. **United States v. Tropeano, 252 F.3d 653 (2d Cir. 2001)**:
        **Quote**: "When a party's evidence is unfairly excluded or held to a higher standard than the opposing party's evidence, the court's actions constitute a denial of due process."
        The **General Sessions Court** unfairly excluded the **AT&T log file** by imposing stricter authentication requirements on the Plaintiffs, which deprived them of the ability to present critical evidence.
    2. **State v. Hughes, 544 S.W.3d 293 (Tenn. 2018)**:
        **Quote**: "Any evidence that is introduced must meet the same standards for authentication, regardless of which party presents it."
        The **General Sessions Court** violated this principle by allowing the **Defendants' unauthenticated.

**SECTION 8: FAILURE TO RULE ON PROTECTIVE ORDERS AND POLICE HARASSMENT**

The **United States District Court (USDC)** failed to rule on the Plaintiffs' **Protective and Cease and Desist Orders** filed on **September 4, 2024**, and **September 12, 2024**. This failure resulted in continued harm to the Plaintiffs, including harassment and threats from the Defendants, **Kevin Buchiero** and **Pamela Nadeau**, as well as escalating intimidation by the **Spring Hill Police Department**.

The **USDC**'s delay in ruling on these emergency motions, despite the significant threat posed to the Plaintiffs, violated federal laws that require timely rulings in cases involving imminent harm.

**Federal Law on Timely Rulings for Protective Orders**

**28 U.S.C. § 1657** mandates that courts prioritize motions involving imminent harm or risk of irreparable injury. The **USDC** failed to act in a timely manner on the Plaintiffs' protective orders, allowing the harm to continue unchecked. The ongoing harassment, including the **Directed Energy Weapon (DEW)** attacks, required immediate judicial intervention, which was not provided.

- **United States Supreme Court Case Laws**:
  1. *Carey v. Piphus,* 435 U.S. 247 (1978):
     **Quote**: "Failure to provide timely adjudication in cases where constitutional rights are at risk constitutes a denial of due process, which can lead to compensatory and punitive damages."
     The **USDC**'s failure to rule on the protective orders placed the Plaintiffs in a position of ongoing harm, violating their due process rights and warranting damages for the harm suffered.
  2. *Brock v. Roadway Express, Inc.,* 481 U.S. 252 (1987):
     **Quote**: "In cases involving irreparable harm, courts must act swiftly to ensure that the party's rights are protected and that no further damage occurs."
     The **USDC**'s delay in addressing the Plaintiffs' motions led to continued harm, violating the statutory requirement to prioritize cases involving potential harm.
  3. *Zinermon v. Burch,* 494 U.S. 113 (1990):
     **Quote**: "When an individual's constitutional rights are at risk, the judiciary has an obligation to act swiftly to provide relief."
     The **USDC**'s inaction allowed ongoing violations of the Plaintiffs' constitutional rights, which should have been immediately addressed.

**Harassment by the Spring Hill Police Department**

Following the issuance of fraudulent protective orders by the **General Sessions Court**, the **Spring Hill Police Department** engaged in repeated attempts to harass and intimidate the Plaintiffs. On multiple occasions, the police banged on the Plaintiffs' door without identifying themselves or stating their purpose, leading the Plaintiffs to fear for their safety. These actions were part of an orchestrated attempt to enforce the retaliatory protective orders and further escalate the harassment. The **Spring Hill Police Department**'s actions violated the Plaintiffs' rights under **42 U.S.C. § 1983**, which provides recourse for individuals whose rights have been violated under color of law.

- **Federal Statutes**:
    1. **42 U.S.C. § 1983**: Provides a remedy for individuals whose constitutional rights have been violated by law enforcement or other government actors. The Plaintiffs' rights under the **Fourth Amendment** were violated by the repeated attempts of the **Spring Hill Police Department** to intimidate them without legal cause.
    2. **Fourth Amendment**: Protects individuals from unreasonable searches and seizures. The police's attempts to harass and intimidate the Plaintiffs, without any legal justification, violated their Fourth Amendment rights.

- **United States Supreme Court Case Laws**:
    1. *Terry v. Ohio,* 392 U.S. 1 (1968):
       **Quote**: "Law enforcement must have reasonable suspicion, supported by facts, before detaining or attempting to arrest individuals."
       The **Spring Hill Police Department** acted without reasonable suspicion or legal cause in their repeated attempts to intimidate the Plaintiffs.
    2. *Mapp v. Ohio,* 367 U.S. 643 (1961):
       **Quote**: "Any actions by law enforcement that violate the Fourth Amendment are unconstitutional and can result in civil liability under § 1983."
       The **Spring Hill Police Department** violated the Plaintiffs' Fourth Amendment rights by engaging in unlawful attempts to harass and arrest Mr. Simpkins.
    3. *Carey v. Piphus,* 435 U.S. 247 (1978):
       **Quote**: "Individuals whose constitutional rights are violated by law enforcement are

entitled to compensatory damages for the harm suffered."

The Plaintiffs are entitled to damages for the emotional and physical harm caused by the **Spring Hill Police Department's** illegal actions.

## SECTION 9: IMPACT OF DELAYS AND FAILURE TO RULE ON PROTECTIVE ORDERS

The **USDC's** failure to rule on the Plaintiffs' **Protective and Cease and Desist Orders** within a reasonable timeframe has caused significant harm. More than 30 days have passed since the filing of the first motion on **September 4, 2024**, and the Plaintiffs remain without the necessary protection from ongoing harassment and threats. This delay has allowed the Defendants to continue their harmful actions, including the use of **Directed Energy Weapons** and other forms of harassment, stalking via cars and on foot in stores and restaurants. Cyber hacking the Plaintiffs phones and computers and the destruction of the Plaintiff's only computer, for the thirteenth computer to be destroyed in the last four years.

### Federal Law on Timely Rulings

**28 U.S.C. § 1657** requires that courts prioritize motions where delay could lead to irreparable harm. The **USDC's** failure to prioritize the Plaintiffs' motions constitutes a violation of this statute and further compounds the harm suffered by the Plaintiffs.

- **United States Supreme Court Case Laws**:
  1. *Carey v. Piphus,* 435 U.S. 247 (1978):
     **Quote**: "Failure to act in cases involving imminent harm or irreparable injury is a violation of due process, entitling the injured party to relief."
     The **USDC's** failure to prioritize the Plaintiffs' motions allowed the Defendants' harmful actions to continue unchecked, violating the Plaintiffs' due process rights.
  2. *Brock v. Roadway Express, Inc.,* 481 U.S. 252 (1987):
     **Quote**: "Courts must act expeditiously when delay could result in irreparable harm."
     The **USDC's** delay in ruling on the Plaintiffs' protective orders has led to ongoing harm, including emotional distress and physical danger.
  3. *Mathews v. Eldridge,* 424 U.S. 319 (1976):
     **Quote**: "Due process requires a prompt and fair adjudication of issues where an

individual's life, liberty, or property is at stake."

The **USDC**'s failure to act in a timely manner has deprived the Plaintiffs of their due process rights, as they remain without protection from the ongoing threats posed by the Defendants.

## SECTION 10: POLICE HARASSMENT AND FOURTH AMENDMENT VIOLATIONS (continued)

### Ongoing Harassment and Attempts to Arrest Without Cause

The **Spring Hill Police Department** has repeatedly attempted to allegedly threaten arrest of **David Simpkins** without cause, acting on the basis of the fraudulent protective orders issued by the **General Sessions Court**. Despite Mr. Simpkins complying with the conditions of the protective orders and not violating any laws, the police have continued to harass him and his wife, often showing up at their residence in the early hours of the morning and refusing to identify themselves. This conduct clearly constitutes a violation of the **Fourth Amendment** and continues to cause the Plaintiffs severe emotional distress and physical harm.

- **United States Supreme Court Case Laws**:
    1. *Payton v. New York,* 445 U.S. 573 (1980):

        **Quote**: "Absent exigent circumstances, police officers cannot make warrantless entries into a person's home to effectuate an arrest."

        The **Spring Hill Police Department**'s actions, which included multiple attempts to enter the Plaintiffs' residence by demanding they open the door but not identify themselves, violated their Fourth Amendment rights.

    2. *Florida v. Jardines,* 569 U.S. 1 (2013):

        **Quote**: "The right of privacy in one's home is sacrosanct, and any attempts to intrude upon it without proper legal authorization are unconstitutional."

        The Plaintiffs' right to privacy and protection from unlawful intrusion was violated by the police's repeated visits to their home in an effort to intimidate them.

    1. *Gates v. Illinois,* 462 U.S. 213 (1983):

        **Quote**: "Probable cause is required for any law enforcement action that infringes upon an individual's liberty or privacy."

The **Spring Hill Police Department** lacked probable cause for their repeated attempts to allegedly attempt to arrest Mr. Simpkins, making their actions unconstitutional. The Plaintiffs seek relief for the emotional and physical harm caused by these Fourth Amendment violations and request that the **USDC** intervene to protect their rights from further infringement by the **Spring Hill Police Department**.

## SECTION 11: REQUEST FOR FEDERAL RELIEF AND DAMAGES

Given the ongoing violations of the Plaintiffs' rights, the **Plaintiffs** respectfully request that this Court provide the following relief:

### 1. Immediate Rulings on All Prior Pending Federal Motions

The **Plaintiffs** request that the **USDC** immediately issue rulings on the following motions:

- **Motion for Protective and Cease and Desist Orders** (Filed on September 4, 2024, and **Emergency Motion for Protective & Cease & Desist SHPD,** September 12, 2024).
- **Emergency Motion to USDC Chief Judge Campbell** (Filed September 23, 2024).

These motions are critical to the Plaintiffs' protection and should be prioritized under **28 U.S.C. § 1657**, as further delay could result in irreparable harm.

### 2. Vacatur of Retaliatory Protective Orders

The **Plaintiffs** request that the Court vacate the retaliatory protective orders issued by the **General Sessions Court** in **Franklin, TN**, on **September 14, 2024**, which were based on fraudulent and unauthenticated evidence. These orders were issued in violation of the **Supremacy Clause**, and their enforcement has caused ongoing harm to the Plaintiffs.

### 3. Federal Investigation into Judicial Misconduct

The **Plaintiffs** request a federal investigation into the actions of **Magistrate Judge Frensley, Judge Crenshaw**, and **Judge Denise Andre** for their failure to apply federal and state laws correctly and their disregard for the Plaintiffs' due process rights.

### 4. Protection from Harassment by Law Enforcement

The **Plaintiffs** request a federal injunction against further harassment by the **Spring Hill Police Department**, the stalking by the Sheriff's Department in Spring Hill at the Plaintiff's home and in

Franklin, TN stalking the Plaintiffs when they were working on an Emergency Motion to the Federal Couirt, whose actions have violated the Plaintiffs' **Fourth Amendment rights**. The Plaintiffs also seek an order requiring the **Spring Hill Police Department** to cease any further attempts to intimidate or unlawfully allegedly attempt to arrest Mr. Simpkins.

## 5. <u>Award of Damages</u>

The **Plaintiffs** seek compensatory and punitive damages for the emotional, physical, and financial harm caused by the Defendants' fraudulent actions, the failure of the court to act, and the illegal conduct of the **Spring Hill Police Department**.

- *Carey v. Piphus,* 435 U.S. 247 (1978): Entitles individuals to compensatory damages for violations of their constitutional rights.
- *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971): Provides a cause of action for damages against federal officials who have violated an individual's constitutional rights.

The Plaintiffs request damages to cover the following:

- Emotional distress caused by repeated harassment and intimidation.
- Physical harm resulting from the use of **Directed Energy Weapons**.
- Financial losses due to the Court's failure to rule in a timely manner and the resulting foreclosure risks.

## **CONCLUSION:**

The **Plaintiffs**, David and Sally Simpkins, have been subjected to ongoing harm due to the misconduct of Federal and State Courts, as well as the retaliatory actions of the **Defendants**, **Kevin Buchiero** and **Pamela Nadeau**. The **General Sessions Court** violated the **Supremacy Clause** by issuing state-level protective orders in direct conflict with pending federal motions. Furthermore, the **USDC** has failed to act on the Plaintiffs' emergency motions, allowing the harm to continue.

In light of these violations, the **Plaintiffs** respectfully request the following:

- Immediate rulings on all pending federal motions.
- Vacatur of the retaliatory protective orders issued by the **General Sessions Court**.
- A federal investigation into the misconduct of **Magistrate Judge Frensley**, **Judge Crenshaw**, and **Judge Denise Andre**.

- An injunction against further harassment by the **Spring Hill Police Department**, and **Maury and Williamson County Sherrif's Departments.**
- Compensatory and punitive damages for the emotional, physical, and financial harm suffered by the **Plaintiffs**.

The **Plaintiffs** reserve the right to amend this motion and present additional evidence as necessary to fully vindicate their rights.

**From Previous Motions:**

V.   **Numerous other Hate and Cyber Crimes against the Plaintiffs by the Community.**

5)        Over the last 7 years, the Simpkins have endured the accumulative effect of planned systematic and increased harassment that includes neighbors on the front and back side of the Simpkins home. For perspective, the Simpkins list just a few of the targeted harassments:

➢ The neighbor across the street has been a relentless, malicious and dangerous hacker. This includes access to our router, the Wi-Fi on the window AC unit, the security cameras (two different systems), our phones, our one computer, and the refrigerator.

➢ As reported on many occasions to the Spring Hill Police, teenagers have been given the assignment of harassing the Simpkins through verbal abuse, taunting outside of their tent, weapons such as arrows and bolts shot into the side of the tent, car burn tire rubber events with cars right in front of our driveway, just to name a few. These kids have been told that they are protected and are "untouchable," and they say this directly to us.

➢ Our cell phone service was interfered with through the billing process and the improper and constant failure of T-Mobile to probably credit our account when we were overpaying. And the fact that the company could never actually mail us the proper phones, they would get lost in the mail. Clear interception and interference. Theft of those phones.

➢ Our bank account has been accessed from the standpoint that we have had incessant fraud that we have had to report and get corrected, which affects our bank balance until those corrections are made. We have had mysterious double billing occurring on days where our bank account was particularly low because it was just before we were receiving the next paycheck.

➢ We have had to purchase multiple new cell phones due to signs that the phone has been hacked or is outright destroyed by the hackers. The symptoms are too numerous, but we have done significant research to know that this has occurred multiple times.

- We've proven to multiple courts that our mailing address has been hijacked by John Mayer builders, and no action has been taken by the authorities. Our mail continues to be received by an unauthorized party who holds the mail and decides what will be passed through to us if anything. Further, the postman on our route repeatedly does not deliver certified mail to our house in accordance with the law. We have proof of this as well.
- We have been targeted by the IRS with false liens/collections/threats of incarceration and property seizure when we have a net operating loss (Credit) that the IRS is refusing to apply any of the false debts claimed by the IRS. Further the federal court has not ruled on the matter with the IRS to stop the upcoming home property seizure. The Nashville USDC is going to illegally allow the seizure of the Plaintiff's property.
- Our car tires have been punctured by screws and long siding nails. The wheel covers have been stolen. Someone hit the side of the Simpkins car and never reported it. Someone punctured the oil pan, and it had to be replaced. Radiator hoses were cut to cause the loss of our engine.
- the Simpkins router and internet service has actually been incessantly interfered with to reduce bandwidth and hijacked multiple times at key legal filing times during the case.
- Digital logs reviewed by the GE technician show the Simpkins refrigerator has been hacked through its Wi-Fi for the last 2 and 1/2 years which explains all of the interference with temperatures water shut off ice cube maker shut off, and much more. Repeated food losses have been endured. The Mac address points to the neighbor in front of the Simpkins home, directly across the street.
- The Simpkins window AC unit, which is the only cool air feeding the property, since the central air has been turned off for several years due to mold contamination, provides air with an air duct attached to it which goes to Mrs. Simpkins' bed which is covered and sealed with tarps. This wi-fi unit has been hacked and the control of its operation is by the neighbor across the street. This has already been reported that Mrs. Simpkins' Air supply was completely shut off by the neighbor, who knows full well from Mr. Simpkins and the pictures available to the public and through his access to the house directly (entering illegally to reset the router so he can access the network), with the severe consequences for Mrs. Simpkins. It is clear that he intended for her to die.
- The Simpkins have endured repeated hacking of their email and utility accounts where passwords have been deleted and changed. Old phone numbers have been put in place of their newest phone numbers.

- The Simpkins have endured the deletion of auto pay arrangements which they discovered after they received notice of non-payment. In the case of AT&T, the Simpkins did not receive word of non-payment for 3 months in order for the Simpkins to end up in a collection status and was service turned off and a cost for reinstating their service.
- Simpkins electric bill due dates have been deliberately altered from the payment agreement plan so that they would miss the timely payment of their electric bill installments resulting in their electric being shut off.
- Someone sprayed toxic chemicals on the Simpkins front door and the patio leading up to it. This is on record with the Springhill police. It caused the Kittens to throw up their food for days and their eyes to swell and become infected.
- The garbage was deliberately not picked up for two (2) weeks during triple digit heat waves after the neighbor across the street had turned off the Refrigerator causing the ruin of all their food, which in turn causing a stench that invaded the Simpkins tent and affected their immediate neighbors.
- Multiple calls to the FBI's supposed call center have clearly been redirected for the last 2-3 years, as the same rude female answers those calls. It would be an impossibility for the same person to be reached if we were reaching a legitimate FBI call center.
- Our Liberty mutual Home and Car insurance has mysteriously tripled, despite no accidents or traffic tickets for over 30 years.
- Mr. Simpkins' VA representative, Jacob Miller, failed to notify the Simpkins of the December 2024 foreclosure sale and when contacted failed to respond until the night before the foreclosure sale. At that time, he notified Mr. Simpkins that there was a moratorium on VA loans until May of 2024. He also entirely failed to notify the Simpkins, which they learned of only in the last week, was that it was the intent of the moratorium was for the lender to reconstruct the loan to allow for an affordable payment option. Freedom mortgage has never provided the Simpkins with any such option. And the federal court has done nothing to stop the false and fraudulent 7th attempt at foreclosing on the Simpkins property when they are past the statute of limitations to take such action.
- Medical professionals have refused proper treatment and proper documentation of Mr. Simpkins' severe health issues. Some of these cases have been detailed in the same motions to the federal court. But the bottom line is there are key players who are working to ensure that Mr. Simpkins gets labeled as a mentally ill veteran, as opposed to being treated for physical ailments.

## VII. Documented and Proven By a Court of Law, Property is a Total Loss

6) Next there is the total loss of the property, the Plaintiff's belongings, household goods, lack of life for 7 years, (no holidays, birthdays or anniversaries could be celebrated due to the horrific circumstances that both the heinous acts of the Builder, John Maher Builders, Inc., CEO, John Maher, COO, Tony Maher, who *"Abandoned"* the (**Plaintiffs** and the **Government**), with **"THEFT"** of the **Plaintiffs** and the **Government's** "FUNDS / MONIES" by knowingly committing egregious, wanton, malicious, acts by signing the *"Warranty of Completion of Construction,"* knowing that they were committing Federal Fraud.

7) The plaintiffs have already established for the Courts the calculated amount of damages. Base compensatory damages of $26,087,601 with pre-interest at $14,348,180 for five and a half years at 10%. Then there is the Appellate Court Ruling in favor of the Plaintiffs for numerous counts of fraud both Civil and Criminal on May 4th, 2022, and the two (2) years post-interest at 7%. And further the Plaintiffs through several authorities have proven that they are allowed by law Incidental and Consequential Damages, Treble Damages, Punitive Damages, Emotional Distress Damages, in the Complaint from pages 91-95.

> "Further, there is no statute of limitations for a fraud on the court claim and a court may consider such a claim even if no adversarial parties are before the court. *In re Roussos*, 541 B.R. at 729."

8) Further, the Plaintiffs presented to the Court factual evidence of conspiracy to commit "Frauds" on the "Courts" both by the Chancery and Appellate Courts, by Court Clerks, the Defendant's Attorneys, and Judges of the Courts based on the exhibits, transcripts and admissions by the very parties committing the unlawful acts on the Courts. These things cannot be ignored by this Court. This Court cannot convert a "Criminal Complaint," to a "Civil Complaint" and start a whole new case for a civil matter in an attempt to drag this case out several months or years in violation of Federal Law in this Court's already failure to rule on the *"Motion for Subject Matter Jurisdiction"* presented to this Court on January 31st, 2024.

## VIII. See Applicable Case Law Below Supporting the Damages the Simpkins are Entitled To

32) The Plaintiffs reiterate what they presented to the Chancery and Appellate Courts as well as the Critical Update to the DOJ, FBI, SecNav and VA OIG, see *(EX-A195 - Critical Update to DOJ FBI SECNAV VA OIG 8-18-2023)* that "Residential Mortgage Fraud" is committed by a person who,

knowingly and with intent to defraud, presents, causes to be presented, or prepares with knowledge or belief that it will be used in soliciting an applicant for, applying for, underwriting or closing a residential mortgage loan, or filing with a county clerk of any county in the state arising out of and related to the closing of a residential mortgage loan, any written statement which:

1. contains materially false information concerning any fact material thereto; or

2. conceals, for the purpose of misleading, information concerning any fact material thereto.

33) Please note the purpose of these case laws is to prove to the USDC that both State and Federal Case Law is listed below that details that the Builder's actions did not need to be knowing and intentional, but if they were severe penalties will be applied by law. Since the Appellate Court Tribunal already found them guilty of several frauds, and that the Plaintiffs satisfied the requirement to prove "Fraudulent Concealment and Fraudulent Misrepresentation," and "Judicially Noticed" (ALL OF THE PLAINIITSS EXHIBITS AS EVIDENCE), proves that there is no "genuine dispute" of any "material facts" in the case. Therefore, the Plaintiffs have proven "Federal Mortgage Fraud" without any question and are entitled to an immediate ruling in their favor based on the Laws and Authorities. See (**Prayer for Relief** on pages 35-38 of this motion).

34) In *Gwen Fayne Et Al. v. Teresa Vincent Et Al.* 301 S.W.3d 162 (Tenn. 2009);

"*Our conclusion that an act need not be knowing or intentional to be considered deceptive for the purpose of the Tennessee Consumer Protection Act is bolstered by the federal courts' interpretation of Section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C.A. § 45(a)(1) (West 2009*). The federal courts have concluded that intent is not necessary to establish a violation of the Section of the Federal Trade Commission Act. See, e.g., *FTC v. Bay Area Bus. Council, Inc*., 423 F.3d 627, 635 (7th Cir.2005); *FTC v. Freecom Commc'ns, Inc.,* 401 F.3d 1192, 1202 (10th Cir.2005); *FTC v. World Travel Vacation Brokers, Inc.,* 861 F.2d 1020, 1029 (7th Cir.1988). The United States Supreme Court has held that "*innocence of motive" did not relieve sellers of liability* because *"there is a kind of fraud, as courts of equity have long perceived, in clinging to a benefit which is the product of misrepresentation, however innocently made." FTC v. Algoma Lumber Co.,* 291 U.S. 67, 81, 54 S.Ct. 315, 78 L.Ed. 655 (1934). The rationale for this is that "[t]he purpose of the statute is protection of the public, not punishment of a wrongdoer." *Gimbel Bros. v. FTC,* 116 F.2d 578, 579 (2d Cir.1941) (finding that "[w]hether or not the advertiser knows the representations to be false, the deception of purchasers is the same"); accord *FTC v. Freecom Commc'ns, Inc.,* 401 F.3d at 1202. Therefore, a violation is judged by the likely effect on consumers rather than the intention of those making misrepresentations. *FTC v. Freecom Commc'ns, Inc.,* 401 F.3d at 1202."

"*Other states have likewise declined to require intent on the part of the seller in finding violations of state consumer protection acts. See, e.g., Kenai Chrysler Ctr., Inc. v. Denison,* 167 P.3d 1240, 1255 (Alaska 2007); *Cheshire Mortgage Serv., Inc. v. Montes,* 223 Conn. 80, 612 A.2d 1130, 1144 (1992); *State ex rel. Miller v. Pace,* 677 N.W.2d 761, 771 (Iowa 2004) (noting that statute required no intent to deceive or knowledge of falsity, but did require intent that others rely on omissions); *State v. Weinschenk,* 868 A.2d 200, 206 (Me.2005) *(act may be deceptive regardless of good faith or lack of intent to deceive); Gray v. N.C. Ins. Underwriting Ass'n,* 352 N.C. 61, 529 S.E.2d 676, 681 (2000) *(good faith is not a defense); Carter v. Gugliuzzi,* 168 Vt. 48, 716 A.2d 17, 24-25

(1998) *(lack of intent and good faith not defenses)*; *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash.2d 27, 204 P.3d 885, 894 32 (2009) (en banc); see also Consumer Protection and the Law § 3:10, at 3-10 to 3-12, n. 23 (listing cases)."

35)     Therefore, based on the above case law, collectively they clearly establish several factors on the Plaintiffs / Appellant's Case as the Appellate Court has stated correctly in the above case law, but the Appellate Court Tribunal made an inadvertent error in dismissing the two claims, ***Unfair and Deceptive Practices***, and ***Theft***. The Plaintiffs / Appellants are entitled to both and claim so heretofore, and they will apply as the law has already been established with binding authority, ***Gwen Fayne Et Al. v. Teresa Vincent Et Al.*** Due to the fact there is no defense for Statute of Limitations when there is "Fraud" as stated in *(Tenn. Code Ann. § 28-3-205. Limitation Not Defense),*

The <u>limitation provided by this part is not available as a defense</u> to ***<u>any person who has been guilty of fraud</u>*** in **performing or furnishing** the **design, planning, supervision, observation** of **construction, construction of, or land surveying, in connection with an improvement**, or to any person who <u>**wrongfully conceals any such cause of action.**</u>

36)     Therefore, the Plaintiffs / Appellants proved that the Defendants in all respects should have been immediately held accountable to the law for the ruling by the Appellate Court for the "Breach of Contract," "Breach of Warranty Express or Implied," "Fraudulent Concealment," "Fraudulent Misrepresentation," "Constructive Fraud," "Promissory Fraud," and "Fraudulent Inducement") based on the newly discovered Tennessee Statutes and Federal Statutes due to the "Abandonment" of the Simpkins after the first month of ownership, in August of 2017, "Abandonment" occurred three weeks after closing and the Builder never came out to the property or responded to investigate any of the Expert Professional Reports.

37)     See the following new Tennessee Statutes that the Chancery and Appellate Courts refused to hold the Builder accountable to. It cannot be emphasized enough the fact that the Courts intentionally ignored those statutes to ensure an outcome in favor of the Builder and other parties unlawfully. It is also critical to emphasize the federal court's subject-matter jurisdiction in this case, as outlined by \*\*18 U.S. Code § 3231\*\*, which provides the district courts with original jurisdiction over federal offenses, including fraud and violations involving federal funds. Given the VA loan and federal involvement, this case properly belongs in federal court. The Plaintiffs have proven violations of federal law, warranting immediate action by this Court.

**"Tennessee Statutes Newly Discovered in April of 2023;**

Tenn. Code Ann. § 62-6-510. Prohibited acts. For; ***Abandonment or willful failure to perform, without justification***.
Tenn. Code Ann. § 62-6-511. False Documentation
Tenn. Code Ann. § 62-6-512. Criminal Penalty commits a Class A misdemeanor. Each violation is deemed a separate offense."

38) The Plaintiffs are presenting new information from this point forward concerning the facts that have proven by both Tennessee State Law and Authorities and Federal Laws and Authorities that they were entitled to at minimum "Incidental and Consequential Damages," (Tenn. Code Ann. § 47-2-715. Buyer's Incidental and Consequential Damages). See (***Scott Campbell, Et Al. V. William H. Teague, Et Al.*** No. W2009-00529-COA-R3-3 CV (March 31, 2010), Pg 20, paras 3 & 4.

"***Scott Campbell, et al. v. William H. Teague, Et Al.*** No. W2009-00529-COA-R3-CV (March 31, 2010) – **Compensatory, Consequential and Incidental Damages, Punitive Damages, Treble Damages**

"In order to recover under the TCPA, the plaintiff must prove: (1) that the defendant engaged in an **unfair or deceptive act or practice declared unlawful** by the TCPA and (2) that the **defendant's conduct caused an "ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated...."** Tenn. Code Ann. § 47-18-109(a)(1). As discussed below, the **defendant's conduct need not be willful or even knowing; <u>however, if it is, the TCPA permits the trial court to award treble damages</u>**. Tenn. Code Ann. § 47-18-109(a)(3); ***Concrete Spaces, Inc. v. Sender***, 2 S.W.3d 901, 910 n. 13 (Tenn.1999); ***Haverlah v. Memphis Aviation, Inc.***, 674 S.W.2d 297, 306 (Tenn. Ct. App.1984)."

"A deceptive act or practice is one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact. FN10 Thus, for the purposes of the TCPA and other little FTC acts, the essence of deception is misleading consumers by a merchant's statements, silence, or actions. ***Jonathan Sheldon & Carolyn L. Carter***, Unfair and Deceptive Acts and Practices § 4.2.3.1, at 118-19 (5th ed.2001) [hereinafter Unfair and Deceptive Acts and Practices]. The concept of unfairness is even broader than the concept of deceptiveness, and it applies to various abusive business practices that are not necessarily deceptive. Unfair and Deceptive Acts and Practices § 4.3.3.1, at 156. In the 1994 legislation reauthorizing the Federal Trade Commission, Congress undertook to codify the Commission's policy statement on unfairness by stating that an act or practice should not be deemed unfair "unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C.A. § 45(n). Following the mandate of Tenn. Code Ann. § 47-18-115, we will use this description of unfairness to guide our interpretation of Tenn. Code Ann. § 47-18-104(a). ***Tucker v. Sierra Builders***, 180 S.W.3d 116-117 (footnotes omitted)."

"**Perhaps most egregious is the fact that, despite giving the Campbells a one-year express warranty when they purchased the home, the Teagues repeatedly refused to honor that agreement, even though they knew of the safety concerns and code violations.**"

"In addition to damages associated with diminution in value and cost of repairs, courts may also award all damages that are the normal and foreseeable result of a breach of contract. ***Holladay v. Speed***, 208 S.W.3d 408, 415 (Tenn. Ct. App. 2005) (citing ***Morrow v. Jones***, 166 S.W.3d 254 (Tenn. Ct. App. 2004)). These types of damages include reasonably ***<u>foreseeable consequential and</u>***

*incidental damages*. *Id.* In the present case, the parties stipulated that the **Campbells did not need to prove a breach of contract in order to recover consequential damages**. Consequently, <u>the only issue the trial court had to determine was the amount of the consequential damages to which the Campbells are entitled.</u> In *Isaacs v. Bokor*, 566 S.W.2d 532, 536 (Tenn. 1978), a case involving rescission and restitution, <u>**our Supreme Court approved** a jury's award of purchase payments, **interest payments, and other incidental expenses to the purchaser of a residence.**</u> Relying upon its previous holding in *Isaacs*, <u>our Supreme Court</u>, in *Mills v. Brown*, 568 S.W.2d 100, 103 (Tenn. 1978), held that "<u>**a purchaser who has been the victim of fraud or mistake may recover, in addition to the purchase price, other damages which he may have incurred in good faith by reason of mistake, such as cost of improvements and the like.**</u>" In fact, the range of potentially recoverable consequential and incidental damages is very broad and varies from case to case."

"Awarding punitive damages based upon the heinous nature of the defendant's tortious conduct furthers the historical purposes of punitive damages — punishment and deterrence. *Schaefer v. Miller, supra*, <u>322 Md. at 321</u>, <u>587 A.2d at 503</u>; *Embrey v. Holly*, <u>293 Md. 128, 142</u>, <u>442 A.2d 966, 973</u> (1982); *First Nat'l Bank v. Fid. Dep. Co.*, <u>283 Md. 228, 232</u>, <u>389 A.2d 359, 361</u> (1978). Thus, punitive damages are awarded in an attempt to punish a defendant whose conduct is characterized by evil motive, intent to injure, or fraud, and to warn others contemplating similar conduct of the serious risk of monetary liability." *Ellerin v. Fairfax Savings*, 337 Md. 216, 228 (Md. 1995)

*Carey*, 435 U.S. at 263–64 (mental and emotional distress actually caused by denial of procedural due process is compensable under § 1983).

39)    *Murvin v. Cofer*, 968 S.W.2D 304 (TENN. CT. APP. 1997) – **Treble Damages**

"In an action of this nature under the Consumer Protection Act, TCA 14-18-109 provides that the Court may award **treble damages for a violation of the Act** if the Court finds that the unfair or deceptive act or practice was a willful or knowing violation of the Act. **<u>In this case, the Court does find that there was a willful or knowing violation of the Act.</u>**"

40)    *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). – **Punitive Damages;**

"In Tennessee, therefore, a court may henceforth award punitive damages only if it finds a defendant has acted either (1) **intentionally**, (2) **fraudulently**, (3) **maliciously**, or (4) **recklessly**." 833 S.W.2d at 901

A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result. *Cf.* [Tenn. Code Ann. § 39-11-302(a) (1991) (criminal definition of 'intentional')]. A person acts **fraudulently** when (1) **<u>the person intentionally misrepresents an existing, material fact or produces a false impression, in order to mislead another or to obtain an undue advantage</u>**, and (2) another is injured because of reasonable reliance on that misrepresentation. *See First Nat'l Bank v. Brooks Farms*, 821 S.W.2d 925, 927 (Tenn. 1991). A person acts maliciously when the person is motivated by ill will, hatred or personal spite. **A person acts recklessly when the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.** *Cf.* [Tenn. Code Ann. § 39-11-302(c) (1991) (criminal definition of 'reckless')]. *Id.*

Further, because punitive damages are to be awarded only in the most egregious of cases, a plaintiff must prove the defendant's intentional, fraudulent, malicious, or reckless conduct by clear and convincing evidence.[FN3] This higher standard of proof is appropriate given the twin purposes of punishment and deterrence: fairness requires that a defendant's wrong be clearly established before punishment, as such, is imposed; awarding punitive damages only in clearly appropriate cases better effects deterrence.[FN3] Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence."

41) Therefore, since the Plaintiffs exhibits have been "Judicially Noticed," not only eliminating any question of the Plaintiffs evidence being "unquestionable," but this makes the evidence proof of fraudulent acts by the Builder and the Courts and State Agencies to conspire with the Builder to create a false and fraudulent narrative to illegally dismiss the Plaintiffs case knowing during all this time that the Chancery and Appellate Courts NEVER HAD SUBJECT MATTER JURISDICTION. But, continued to operate as if they did knowing the unlawful acts and Constitutional Rights violations against the Plaintiffs. And the additional following case law proves to the USDC that the Plaintiffs are entitled to a ruling in their favor for all thirteen claims that were in the Original Complaint by the Plaintiffs and any further delay by the USDC to not adjudicate the law faithfully in favor of the Plaintiffs with a ruling for monetary damages and or restitution, even if just for the "Incidental and Consequential" Damages at this time would be questionable at the very least. (There is no legal, lawful, or otherwise reason for any further delay for a ruling for monetary damages in order for the Plaintiffs to IMMEDIATELY OBTAIN EMERGENCY HEALTH CARE BEFORE THEIR HEALTH ESCALATES even further. The USDC will be held accountable for any further health injuries for failure to provide for emergency damages.

42) In Mr. Gafford's Report, (*SIMP-00A91 - A-1 Waterproofing Suppl Invest Inspect by Inspector James Gafford 10-30-2020*), on pages 17-21 details the situation and on page 17, Mr. Gafford states:

"*I classify the actions by John Maher Builders, Inc. at the level of **Gross Negligence**. If there was a level of violation of "**Extreme Gross Negligence**" in the standards used today, I would use that standard as the overall assessment considering the number code violations from different independent Investigations.*"

43) Further, on Page 18, Mr. Gafford states:

"*The indisputable fact that the Builder knew about the mold, and **still sold the property to the Simpkins with a hazardous condition**, then intentionally did not communicate, nor attempt to inspect, investigate, or perform any repairs to the property after receiving independent reports detailing the multitude of issues and code violations, **I classify as knowing, willful malicious intent by the Builder** against the Simpkins.*"

44)    *Sharon B. Pollard v. E.I. Dupont De Nemours, Inc.* No. 95-3010 Ml (August 27, 2003.)
– **Compensatory, Emotional Distress Damages, Punitive Damages**

"On remand, this Court determined the issue of liability for the state tort of **intentional infliction of emotional distress** in favor of Plaintiff. After holding a hearing on front pay and **compensatory damages**, the Court awarded Plaintiff $853,215.00 in front pay and made a total award of compensatory damages in the amount of $1,250,000.001. The Court also determined, **based on clear and convincing evidence, that an award of punitive damages was appropriate** in this case **because DuPont intentionally or recklessly disregarded a substantial and unjustifiable risk to Plaintiff** that **she would suffer severe emotional distress as a result of the treatment of her coworkers**.

45)    *Lourcey v. Estate of Scarlett,* 146 S.W.3d 48,

"Regarding the first element, the law is clear in Tennessee and elsewhere that **either** **intentional** or **reckless conduct** on the part of the defendant *will suffice to establish intentional infliction of emotional distress."*

46)    To help the Court to determine "Incidental and Consequential Damages," in this case the Plaintiffs have improvements, repairs and ongoing mitigation in the thousands of dollars in a hopeless situation when the property was already consumed with eighteen (18) species of mold unknown to the Plaintiffs, when the Plaintiffs purchased the property. Not to mention termites that were not disclosed nor the fifty-eight (58) documented IRC 2012 and IECC 2009 Building Code violations as well as pre-damaged materials, omissions of mandatory materials to keep the structure together and in place, and failure to perform the mandatory property wide required sealing of all external penetrations which reached unconditioned spaces or were exterior walls with caulk or foam. This was misrepresented to the Plaintiffs as being performed property wide and performed above code requirements. In fact, it would later be discovered by Expert Investigative Corporations and their Expert Investigative Reports that the mandatory sealing of the entire property was never performed in any manner. The Plaintiffs have detailed the "Incidental and Consequential" damages in the Spreadsheet in *(SIMP-00A131 - 1375 Round Hill Ln Mit. of Damages Expenses - FINAL 8-26-2024).*

## IX.    Conclusion

47)    The Plaintiffs have proven the following but this is not a complete list (see all Complaints, Filings, Motions, Notices, Memorandums of Law, Pleadings, and Briefs to get a full perspective of the atrocities committed by the Defendants and both the Court Judges and Clerks of the Chancery and Appellate Courts: *(See Transcripts: EX-A209 - Transcript of Kara True Filing Tech Support 8-10-2023), (EX-A210 - Transcripts App. Ct Elizabeth 9-22-2022), (EX-A211 - Transcript of Jakob*

*Schwendimann)*, *(EX-A212 - Transcripts of Proceedings 12-13-2022)* to see just how criminal they all are.

    a. A second attempt was made on Mrs. Simpkins' Life from the night of April 26th, 2024, to the morning of April 27th, 2024, by the same neighbor at 1378 Round Hill Ln, Spring Hill, TN, who has *complete **illegal** control* of all the Plaintiff's Wifi devices including this computer and his cell phones. And the FBI has let his happen continuously for over 3 years knowing the truth of what was happening.

    b. That the Chancery and Appellate Courts never had Subject-Matter-Jurisdiction due to the case being a Federal Mortgage Fraud Case. **(18 U.S. Code § 3231 - District courts.** *"The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States).* And both the local DOJ and FBI suppressed the Plaintiffs Case intentionally to cause the Plaintiffs undue mental, emotional, physical, and financial ruin. They too are coconspirators in the Hate and Cyber Crimes against the Plaintiffs.

    c. That the USDC failed to address alleged Federal violations of the Rules and Laws of the United States by a Magistrate Judge of the USDC Nashville, TN. ***Federal Rules of Civil Procedure (FRCP 73), and Federal Rules of Criminal Procedure (FRCP 59) And Federal Statutes, (28 U.S.C. 636, and 28 U.S.C. 455).***

    d. That all Court Orders of the USDC in Nashville, TN to this date, May 8th, 2024, hold no weight with Federal Laws and are vitiated, null and void for failure to rule on Subject Matter Jurisdiction.

    e. Hate and Cyber Crimes have been happening against the Plaintiffs for over 3 years on their Network, Security Cameras, Refrigerator, and A/C Systems, essentially all of their Wifi Devices and nine (9) different computers have been destroyed in an attempt to stop the Plaintiffs from continuing their fight. There have been over 10 times that the Fridge has stopped cooling both upper and lower compartments, ruining all of the Plaintiffs food. And again, by the neighbor on April 28th and 29th. Security experts that the Simpkins reached out to online stated that the level of attacks were FBI or higher level technology. That is all the Plaintiffs really needed to know. See Exhibit, *((EX-A195 - Critical Update to DOJ 20 FBI SECNAV VA OIG 8-18-2023).*

    f. The Plaintiff's US Postal Mail has been stolen by the Builder for over 5 years with the US Postal Inspector made aware of this and the local FBI made aware of this to no avail.

g. That a liquid bomb was put into the Plaintiff's mailbox on August 4th, 2023, with the TBI and the FBI notified as well as the Spring Hill Police Department, and only the Spring Hill Police Department responded. Neither the TBI nor the FBI have ever investigated the liquid bomb.

h. The IRS has been weaponized against the Plaintiffs and the USDC failed to take any action related to the criminal acts of the IRS. See **Motion:** (MOTION to USDC Respectful Request For Ruling for Minimum Relief 3-19-2024), **Notices:** (Notice to USDC For Additional Exhibits for Sealed Motion (signed) 4-6-2024), Emergency Notice to USDC For New IRS Notice for Ltr1862 (signed) 4-10-2024). See **Exhibits**; (*Exhibit F – IRS Letter (LTS 4624c), (Exhibit N – 2018 Tax Return Redacted), Exhibit – EX-A323 – IRS Notice "CP504" 02-26-20), (Exhibit - EX-A325 IRS Notice Ltr1862 4-10-2024 Redacted FULL), and (IRS NOTICE – EX-A324 – "LT38" Case Ref 3935991975 4-1-2024 Redacted).* No action was taken by the USDC to protect the Plaintiff's Rights for the fraudulent and illegal noticed from the IRS.

i. All of the Plaintiffs Boxed Hard Case Files, external back up drives, all of the Laptop Hard Drives, DVDs, CDs, and Flash Drives were stolen in September 2021, leaving the Plaintiffs with no information, and no computers to fight their case. But they pushed on.

j. The Defendants were found guilty of several frauds by the Appellate Court, "Breach of Contract." "Breach of Warranty Express or Implied," "Breach of the Warranty of Completion of Construction," "Breach of the Covenant of Good Faith and Fair Dealing," "Consrtuctive Fraud," "Fraudulent Concealment," and "Fraudulent Misrepresentation." They are also guilty of "Theft" of the Plaintiffs and the Government's Monies, and they are also guilty of "Unfair Trade Practices" by law.

k. The Defendants "Abandoned" the Plaintiffs after the first month of Ownership in direct violation of Tenn. Code Ann. § 62-6-510. Prohibited acts. For; **(1) Abandonment** or **willful failure to perform**, **without justification**, *any home improvement contract* or project engaged in or undertaken by a contractor. Tenn. Code Ann. § 62-6-512. **Criminal Penalty**, commits a **Class A misdemeanor**. **Each violation is deemed a separate offense**.

l. The defendants failed to answer numerous Expert Investigative Reports and therefore failed to act on the 2 year warranty as required by law.

m. The Defendants Concealed fifty-eight documented code violations, omission of key structural components as required by IRC and IECC Codes.

n. The Defendants signed a Federal Document "Warranty of the Completion of Construction" knowing that they were committing ***"Federal Criminal Fraud"*** against the ***Plaintiffs*** and the ***United States Government.***

o. The Defendants never communicated with the Plaintiffs ever again after the Defendants "Abandonment" of the Plaintiffs after the first month of ownership.

p. The Appellate Court Tribunal "Judicially Noticed" all of the Plaintiffs Exhibits as "Unquestioned" as evidence, thereby making it clear that the Plaintiffs preponderance of hard core evidence with no less than eight (8) expert investigative reports proved their case without question and that there was no "genuine" "material dispute" left for the Defendants to argue. The Plaintiffs are entitled to a "Default Judgment" based on all of the information presented to all of the Courts.

In all the proven facts, the Builder and coconspirators are all guilty of crimes committed against the Plaintiffs, and the Defendants abandoned the Plaintiffs after the first month of ownership, therefore the Defendants and the coconspirators are all liable to damages to the Plaintiffs.

**Prayer For Relief:**

49)    WHEREFORE, Respectfully, the Plaintiffs pray for relief from the United States District Court for a "Default Judgment," or "Interim or Full Award of Damages" with "Extreme Prejudice" against the Defendants based on the preponderance of evidence, the Appellate Court Tribunal "Opinion" and "Judgment" against John Maher Builders, Inc., John Maher and Tony Maher individually. That due to the egregious, willful, knowing, intentional, negligent, wanton, malicious acts committed in a heinously reckless manner, that they treated the Plaintiffs with, and that due to such outrageous acts which are not acceptable in a normal Society, with no justification legal or otherwise, that the Plaintiffs are entitled to an award of "Interim or Full Award of Damages," there is no legal basis or just cause for delay.

50)    Further that the USDC bring the Chancery and Appellate Courts under the law regarding the alleged unlawful if not outright criminal acts by the actors of the Courts who defied the rules and laws to allegedly protect a Builder. The question that must be answered, is why so many Judges, Clerks and

Attorneys allegedly conspired together to protect a single Builder. The Plaintiffs leave this question in the capable hands of the Court.

51)     The Plaintiffs have been egregiously harmed for over six and a half (6.5) years. Further, that the United States District Court is justified in awarding all damages incurred, as well as costs, interests, Pro Se hours worked for their case in lieu of attorney's fees and (grant [ ] such other and further relief as the court may deem to be just and proper,") based on all the filings and exhibits and (judicially noticed exhibits as evidence) as presented by the Plaintiffs in all of their filings since the original Complaint and Laws and Authorities that the Court may see as applicable, to include the following:

1. For an immediate ruling for "Interim or Final Damages" with "Prejudice" and for relief by law for the determinations made by the Appellate Court Tribunal for "Breach of Contract," "Breach of Express or Implied Warranty," "Fraudulent Concealment," and "Fraudulent / Intentional Misrepresentation," against John Maher Builders, Inc., John Maher and Tony Maher individually in the Plaintiffs Complaint with pre and post interest as allowed by Tennessee Statutes, for Compensatory Damages, for Buyer's Incidental and Consequential Damages, for Treble Damages, for Punitive Damages, and for Emotional Distress and Mental Anguish Damages. "Tennessee Supreme Court has allowed the recovery of emotional injury damages that stemmed from injury to real property where misrepresentations had been made." *See **Whaley v. Perkins**,* 197 S.W.3d 665, 670 (Tenn. 2008).

2. Damages to be ordered by the United States District Court to be paid to the Plaintiffs in an amount not less than **$26,087,601.00** plus pre-interest of **$14,348,180.55** for a combined total of **$40,435,781.55**, and post interest of **$95,357,233.99**, which all three (3) defendants are liable for as defined in the Complaint and the Appellant Brief of which the Appellate Court agreed with. In Re, ***Federal Deposit Ins. Corp. v. Allen***, 584 F. Supp. 386 (E.D. Tenn. 1984), citing, ***Continental Bankers Life v. Bank of Alamo***, 578 S.W.2d 625 (Tenn.1979) and ***Mayo v. Pioneer Bank & Trust Co.***, 274 F.2d 320 (5th Cir. 1960).

> "In addition, when a corporation is dominated by an individual or individuals not only as to finance but also as to policy and business practices so that the corporation has no mind, will, or existence of its own and this domination is used to commit a wrong, or fraud or

perpetrate a violation of statutory or positive legal duty, the corporate **\*398** veil will be pierced. ***Continental Bankers Life v. Bank of Alamo***, <u>578 S.W.2d 625</u> (Tenn.1979). ***Mayo v. Pioneer Bank & Trust Co.,*** 274 F.2d 320 (5th Cir. 1960)."

"Thus, in an appropriate case and in furtherance of the ends of justice, a corporation and the individual or individuals owning all its stock and assets will be treated as identical, the corporate cloak being disregarded where used as a cover for fraud or illegality and the corporation and individual or individuals owning all its stock and assets will be treated as identical. See ***Corporations, 18 Am.Jur.*** 2d § 14, p. 599, ***Annot., 63 A.L.R.*** 2d 1051, ***Bangor Punta Operations v. Bangor & A.R. Co.,*** 417 U.S. 703, 713, 94 S. Ct. 2578, 2584, 41 L. Ed. 2d 418, 427 (1974)."

3.  The base compensatory damages with pre and post interest that the Plaintiffs are entitled to is **$216,664,575.63** per each entity and individual. This is not the total damages available to the Plaintiffs. (**Note: Monetary damages increase daily as each month goes by until the case is finalized**). The Plaintiffs are entitled to treble damages by law, Tenn. Code Ann. § 47-18-109(a)(3). The Plaintiffs are entitled to Mental anguish and Emotional distress damages by Tenn. Code Ann. § 29-39-104 for an amount to be determined by Statute.

4.  Damages to be ordered by the Court to be paid to the Plaintiffs for the loss of the Plaintiffs Home Based Business grossing approximately $480,000 per year based on an hourly rate of $250/hr. "After the fact of damages had been established, less certainty is required with regard to the amount of the damages. The amount of lost profits damages may be based on estimates." ***Sostchin v. Doll Enters., Inc.,*** 847 So.2d 1123, 1128 (Fla. Dist. Ct. App. 2003)."

5.  Damages to be ordered by the Court to be paid to the Plaintiffs for the $820,000 difference between the price the Plaintiffs paid for their property in 2017 in comparison to the property JMB recently sold property with the same square footage as the Simpkins property.

6.  The lot value has increased substantially, and the Plaintiffs are entitled to the difference in the original lot price to the current average value of the lots in today's market for subdivisions near the coveted Summit High School is, $236,000.

7.  Damages to be ordered by the Court to be paid to the Plaintiffs for the $274,900 for substitute housing for eighteen months while the Plaintiffs resolve their current property issue with a tear down of the property and rebuild if allowed after lot inspections. T.C.A. §47-2-715. Buyer's incidental and consequential damages.

8. Damages to be ordered by the Court to be paid to the Plaintiffs for the loss of the current property and cost to pay off mortgage of $638,761.92, with the mortgage arrearages of $179,722.92. *Scott Campbell, Et Al. V. William H. Teague, Et Al.* No. W2009-00529-COA-R3-CV (March 31, 2010).

9. Damages to be ordered by the Court to be paid to the Plaintiffs for tear down of the property estimate of $265,000. If actual costs are higher than estimate for unforeseen issues, Defendants are ordered to pay the invoiced difference immediately upon receipt of invoice within forty-eight hours to Plaintiffs.

10. Damages to be ordered by the Court to be paid to the Plaintiffs for Personal Property Losses of estimated $450,000.

11. Damages to be ordered by the Court to be paid to the Plaintiffs for a new Suburban to replace the ruined one due to mold cross contamination from the property to the vehicle because of the Builder's failure to address mold in the property, $102,665.

12. For two thousand four hundred and thirty-three (2,433) days of emotional distress damages from August 22, 2017, to April 2nd, 2024.

13. Plaintiffs request the Court to allow and order costs of suit for Plaintiff's time incurred in this action as Pro Se.

14. The Plaintiffs request that the Court rule on all claims allowed against JMB and award monetary damages according to the law or to the level of egregious acts.

15. The Plaintiffs request that the Court Order John Maher Builders, John Maher and Tony Maher to pay the taxes on the award of damages due to forcing the Simpkins to endure the harshest of conditions for six (6) plus years.

16. For such other proper and further relief as the Court may deem necessary.


"I declare under penalty of perjury that the foregoing is true and correct. Signed on the 6th, day of October 2024." Respectfully submitted,

David M. Simpkins, Sally E. Simpkins, Pro Se
1375 Round Hill Ln.
Spring Hill, TN 37174
Phone: (409) 893-2553
Email: TrueServ1@Protonmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th, day of October 2024. I caused to be served, "Chief Judge Campbell Eyes Only Plaintiffs' Emergency Motion For Life Threatening Situation With Response To Illegal Dismissal Of Case And Respectful Request For Review And Immediate Action By Chief Judge Campbell."

.

**ORIGINAL** filed of the foregoing served in person 6th, day of October 2024, to:

**Honorable Chief Judge Campbell**
719 Church Street
Suite 6425
Nashville, TN 37203
Chambers (615) 736-7013 Phone
Chambers (615) 736-716 Fax

David M. Simpkins, Sally E. Simpkins, Pro Se
1375 Round Hill , Ln.
Spring Hill, TN, 37174
Phone: (409) 893-2553
TrueServ1@Protonmail.com

## List Of Documents and Exhibits Attached to this Motion:

Motion Itself – Plaintiffs Emergency Motion for Life Threatening Situation 10-6-2024

## Exhibits: ALL EXHIBITS BELOW HAVE BEEN PREVIOUSLY FILED WITH THE COURT

1) EX-A640 - Complaint To The Judicial Council of the 6th District 5-21-2024
2) EX-A641 - EMERGENCY UPDATE to the 6th Circuit Court Judicial Executive Council 7-19-2024
3) EX-A642 - EMERGENCY EX-PARTE MOT TO USDC FOR A PROTECTIVE & CEASE & DESIST ORDER 9-3-2024

4) EX-A643 - Emergency Motion to USDC of SHPD Illegal Actions Against Mr. Simpkins 9-12-2024
5) EX-A195 - Critical Update to DOJ FBI SECNAV VA OIG 8-18-2023
6) EX-A645 - Agency File Name Reversed CIA-PASS1 ORIG 8-16-2024
7) SIMP-00A131 - 1375 Round Hill Ln Mit. of Damages Expenses - FINAL 8-22-2024
8) Cricket Wireless Letter of all Phones Hacked 1 Person Arrested 7-19-2024
9) AT&T Showing MC Address of Neighbor's Computer at Bucherio Location 9-3-2024

EX-A646

Ex-A647